UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MOUSA SHEIKHALI,

       Petitioner,

     v.                                  CAUSE NO. 3:25cv961 DRL-SJF

WARDEN,

       Respondent.

OPINION AND ORDER

Immigration detainee Mousa Sheikhali filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Sheikhali filed a reply. The petition is ready to be decided.

According to Mr. Sheikhali, he is a Palestinian national, but records from United States Immigration and Customs Enforcement (ICE) show he is an Israeli citizen. He entered the United States on August 29, 1994. Four years later, he was convicted of aggravated battery with a firearm in Illinois. On September 4, 2001, an immigration judge ordered him removed to Israel. On November 17, 2002, ICE released him on an order of supervision "due to a lack of significant likelihood of removal in the foreseeable future." On October 13, 2025, ICE detained him again, and he is currently held at Miami Correctional Facility.

On December 17, 2025, the respondent represented that he did not know where Mr. Sheikhali would be removed and that it was unlikely that he would be removed within the next 30 days. The respondent also provided a declaration from an ICE official, attesting that

ICE "is pursuing a formal request for travel documents on behalf of the Israeli embassy in Washington. D.C., to effectuate his removal to Israel. The request is pending at this time." [15-2]. The ICE official further attested, "Israel has been issuing travel documents after verifying individuals' identities at this time."

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Sheikhali's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Sheikhali ended 24 years ago. *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period"

2

or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] Given his criminal conviction, Mr. Sheikhali's detention years ago was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government

4

must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Sheikhali has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. To start, the respondent identifies Israel as the only country under consideration for removal. Mr. Sheikhali was released from

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

immigration detention in November 2002 "due to a lack of significant likelihood of removal in the foreseeable future." That was two decades ago, so says little about what might be expected or achievable today. His most recent term of detention now spans six months, and each day is no doubt disconcerting to him; but he must provide the court some reason, other than just time has passed, why his removal in the reasonably foreseeable future is unlikely. Absent certain assumptions, he has not shown why his claim of Palestinian nationality complicates his removal to Israel. It seems the government presented its request to Israel no later than December 22, 2025 [15-2]. The time since may be inordinate or it may be customary, and he gives no reason for the court to find it unusual. As a citizen of Israel, he provides no reason why the country would not accept him for repatriation, or shows that his process of removal is or will be so improbable, intractable, or interminable as to say today there is no significant likelihood of removal in the reasonably foreseeable future. He has not met his preliminary burden of showing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

As a final matter, Mr. Sheikhali filed a letter seeking relief in connection with the conditions of confinement at the Miami Correctional Facility, including unsanitary conditions, inadequate medical treatment, and placement in lockdown. However, he cannot seek relief related to the conditions of his confinement in this habeas proceeding. *Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003) (observing that "[c]hallenges to conditions of confinement . . . fall under [42 U.S.C.] § 1983," whereas "[a]ttacks on the fact or duration of the confinement" fall under the federal habeas statute).

For these reasons, the court:

(1) DENIES the petition for writ of habeas corpus [1]; and

(2) ORDERS the clerk to enter judgment and close this case.

SO ORDERED.

April 24, 2026                                   _s/ Damon R. Leichty_
                                                 Judge, United States District Court